Captain Sheriff SAUDI, Plaintiff

v.

S/T MARINE ATLANTIC, Her Equipment and Appurtenances, In Rem (a/k/a M/V Marine Atlantic, Her Equipment and Appurtenances, In Rem, a/k/a M/T Marine Atlantic, Her Equipment and Appurtenances, In Rem),

Marine Atlantic, Ltd., John Doe Company, Owner of the Vessel Marine Atlantic, Acomarit Services Maritimes, S.A., Osprey Acomarit Ship Management, Inc., Valmet–Appleton, Inc., Appleton Machine Co. (Appleton Marine Division), Appleton Machine Co., Inc., Appleton Marine, Inc., John Doe Company, Designer of the Crane, Koch Petroleum Group, L.P., Jurong Shipyard, Ltd. and United States Trust Company of New York, Defendants

No. CIV. A. H–99–2367.

United States District Court, S.D. Texas, Houston Division.

Dec. 15, 2000.

Joe Alfred Izen, Jr., Izen & Associates, Bellaire, TX, Afton Jane Izen, Bellaire, TX, for plaintiff.

Thomas R. Nork, Bell, Ryniker et al., Houston, TX, for S/T MARINE ATLANTIC, Acromarit Services Martimes, SA, Osprey Acomarit Ship Management, Inc., defendants.

Hollis Horton, Orgain, Bell & Tucker, Beaumont, TX, for Appleton machine, Co., Appleton Machine Co., Inc., Appleton Marine, Inc., defendants.

F. Michael Stenflein, Weil Gotshal & Manges, Houston, TX, for U.S. Trust Company of New York, defendant.

Michael Evan Jaffe, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Michael D. Hudgins, Hudgins, Hudgins and Warrick, Houston, TX, David Kelleher, Stephen M. Hall, Arent Fox et al., Washington, DC, for Valmet-Appleton, Inc., defendant.

Steven Michael Duble, Hays McConn Rice and Pickering, Houston, TX, for Koch Petroleum Group, Koch Shipping, Inc., Koch Supply and Trading Co., defedants.

David Patrick Ayers, Fulbright & Jaworski, Houston, TX, Innes A. MacKillop, White MacKillop et al., Houston, TX, Marine Transport Corp., defendants.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced admiralty and maritime personal injury action, arising from the May 17, 1999 fall of Plaintiff Captain Sheriff Saudi ("Plaintiff" or "Saudi") from a lifting basket as he was transferred from the tanker Marine Atlantic to the M/V American Discovery because of the collapse of an allegedly defective portside crane on the tanker Marine Atlantic, is *inter alia* Defendants Marine Transport Corporation ("MTC") and Marine Transport Lines, Inc.'s ("MTL's") renewed motion for summary judgment (# 158),

The controlling pleading, Plaintiff's third amended complaint (# 73), alleges six causes of action: (1) negligence and gross under common law against all Defendants; (2) unseaworthy vessel and equipment under maritime law against all Defendants; (3) negligence under the Jones Act against all Defendants; (4) breach of warranty of merchantability under pendant jurisdiction against Defendants Valmet–Appleton, Inc., Appleton Machine Co., Inc., Appleton Marine, Inc. and John Doe Company (designer of the crane), now moot because all these Defendants have been dismissed from this action; (5) strict liability in tort for defective design or manufacture and failure to warn against the alleged designers and/or manufacturers of the crane, Defendants Valmet–Appleton, Inc., Appleton Machine Company, Appleton Marine Company, and John Doe Company, now moot for the same reason as the fourth cause of action; and (6) an action *in rem* against the tanker Marine Atlantic under maritime law.

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and ad-

missions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254, 106 S.Ct. 2505. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the burden of proof has shifted to the non-movant, he "must do more that simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–50, 106 S.Ct. 2505. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.,* 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

MTC and MTL, which is a subsidiary of MTC, previously filed a motion for summary judgment, which the Court denied (# 91) without prejudice to its being reurged in order to allow the parties limited discovery regarding any involvement in and legal liability that MTC and MTL might have for Plaintiff's injuries. The Court also permitted Plaintiff to file a third amended complaint after this limited discovery. The deadline for discovery has

since been extended several times by agreement, and MTC and MTL have produced documents and arranged depositions of Richard Farman, the technical director of MTL, and Peter Popov, the general counsel of the MTC group. Defendants additionally incorporate evidence attached to their earlier motion for summary judgment (# 184), including Popov's affidavit signed on April 7, 2000 and attachments thereto.

The third amended complaint identifies MTC and MTL as owners and managers of the tanker Marine Atlantic. MTC and MTL insist that they never owned, operated, managed or chartered the vessel and that they never employed Plaintiff. Therefore, they argue, they owed no legal duty to Plaintiff on the date of his accident or at any other time. They insist that Plaintiff's causes of action properly lie against persons who owned, managed, and operated the tanker on the date of Saudi's injury or against the entity responsible for the design and manufacture of the crane. MTC and MTL insist that discovery has failed to reveal any competent evidence that would dispute Popov's initial affidavit, but only produced material that confirms its accuracy. Moreover, in response to incorrect information published in the 1998 editions of the Lloyd's Register of Shipping and the Guide for the Selection of Tankers, well before Plaintiff's injury, Popov as general counsel for MTC sent a letter dated August 13, 1998 to the publishers of Lloyd's register. That letter summarizes the ownership relationship of MTL and its subsidiaries to the Marine Atlantic and confirms that their ownership interest in the vessel ended three years before Saudi's accident. Ex. 1; Dep. of Popov at pp. 1, 87–88, Ex. 2.

Thus because MTL and MTC owe no legal duty to Plaintiff, MTC and MTL assert they are entitled to summary judgment on all of Plaintiff's claims.

In response, Saudi states that the third amended complaint describes MTC and MTL not only as owners/managers of the vessel, but charges that they chartered, controlled, operated, maintained, inspected, and tested the vessel. He argues that the testimony of their chief engineer, Richard Farman, established that a Marine Transport subsidiary, Marine Transport International, managed the vessel. Exs. A (Dep. of William Gibbs), B (Richard Farman Dep.) and C (Peter Popov Dep.). Saudi claims that after being anchored in a windy, salt-water bay with corrosive spray in Indonesia for thirteen years, from 1981 until 1994, MTL's personnel at Keppel Shipyards in Singapore supervised and participated in the reactivation and refurbishment of the vessel, which included inspection and testing, and thereafter maintained and managed the tanker and MTC and MTL are therefore liable as both a manufacturer and a designer of the offending crane in dispute.

The Restatement (Second) of Torts § 404 (1965) states, "One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of a chattel." The district court in *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F.Supp. 1257, 1286 (E.D.La.1978), *aff'd in part and reversed in part on other grounds*, 674 F.2d 401 (5th Cir.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 448, 74 L.Ed.2d 602, 603 (1982), stated,

> A repairer is generally subject to the same liability as that imposed upon a manufacturer. Restatement (Second) of Torts § 404 (1965). Such manufacturers have a duty to exercise reasonable skill and care in the design and manufacture of their products, commensurate with

the risk of harm flowing from normal use of that product. This duty also binds the manufacturer with respect to component parts incorporated into its final product but manufactured by another. A manufacturer thus has an affirmative duty to make such tests and inspections, during and after the process of manufacture, which are commensurate with the dangers involved in the intended use of the product.

The repairer need not have changed the condition of the product for the worse; liability may be imposed if the product did not leave the repairer's hands in that safe condition in which a competent contractor would have put it and that if the product was used in reliance upon the care and competence of the repairer. *Id., citing* Restatement (Second) of Torts § 404.

MTL's Chief Engineer, Farman, admitted that he supervised the remanufacture, refurbishing and repair of the portside crane, but did not know about the proper design function maintenance procedures and repairs that were required to be performed on that crane. Ignorance is not a defense to liability, argues Saudi, and a person who undertakes to repair or remanufacture an instrumentality for use by others will be held to the standard, above that possessed by the general public, of a technician in that field's reasonable skill, care, and knowledge of the arts, materials, and processes. *Todd,* 467 F.Supp. at 1288–89.

Moreover, Saudi contends, Acomarit's failure to discover and remedy the condition is no defense because a repairer or remanufacturer is subject to liability even if a dangerous condition is discoverable by an inspection that another party is under a duty to make. *Id.* at 1289 (failure of Todd to supervise or inspect adequately was a foreseeable risk of repairer or manufacturer's negligence), *citing* Restatement (Second) of Torts § 396 (a repairer or manu-

facturer is subject to liability even if a dangerous condition is discoverable by an inspection which another party would be under a duty to make). Although Acomarit was the operator of the S/T Marine Atlantic when Saudi was injured and had a duty to make a quadrennial survey of the crane and carry out any needed repairs, that fact does not insulate MTL and MTC from liability because they should have anticipated that Acomarit and other subsequent managers might not remedy the dangerous and defective condition of the crane that they failed to repair or remedy properly. Restatement (Second) of Torts § 447; *Moyer v. Martin Marietta Corp.,* 481 F.2d 585, 591 (5th Cir.1973), *abrogated on other grounds, Baldassaro v. United States,* 64 F.3d 206 (5th Cir.1995).

Because the Court finds that Plaintiff has raised a genuine legal and factual issue for trial with evidence unaddressed and uncontroverted by MTC and MTL, the Court

ORDERS that MTL and MTC's motion for summary judgment is DENIED.